**AMGEN, INC., Plaintiff,**

v.

**ELANEX PHARMACEUTICALS, INC.; Laboratorios Elanex De Costa Rica, S.A.; Bio Sidus S.A.; Merckle GmbH; Biosintetica Ltda.; and Other Unknown Defendants, Defendants.**

**No. C93–1483D.**

United States District Court,
W.D. Washington,
at Seattle.

May 11, 1994.

Harry H. Schneider, Jr., Seattle, WA, Lloyd R. Day, Jr., Cooley, Godward, Castro, Huddleston & Tatum, Palo Alto, CA, D. Dennis Allegretti, John J. McDonnell, Daniel A. Boehnen, Charles W. Shifley, Dale A. Malone, Allegretti & Witcoff, Chicago, IL, Steven M. Odre, Stuart L. Watt, Amgen, Inc., Thousand Oaks, CA, Robert H. Resis, Allegretti & Witcoff, Chicago, IL, for plaintiff.

Martin Truman Crowder, Karr Tuttle Campbell, Seattle, WA, for Elanex Pharmaceuticals Inc. and Laboratorios Elanex De Costa Rica, S.A.

Charles P. Nomellini, Foster Pepper & Shefelman, Seattle, WA, Kenneth J. Jurek, Rosanne J. Faraci, Jonathan E. Singer, Mayer, Brown & Platt, Chicago, IL, for Merckle GmbH and Biosintetica LTDA.

## ORDER

DIMMICK, District Judge.

THIS MATTER comes before the Court on various motions by the plaintiff and the defendants. Plaintiff Amgen Inc. ("Amgen") moves to compel answers to interrogatories and requests for admission. Defendant Elanex Pharmaceuticals, Inc. ("Elanex") moves to schedule a discovery conference regarding the scope of discovery and requests that this Court enter its proposed protective order. Amgen moves to disqualify the attorneys selected by defendant Merckle GMBH ("Merckle"). Finally, Elanex moves to stay discovery until after this Court rules on Elanex's summary judgment motion. The Court, having considered the motions, memoranda, and affidavits submitted by the parties, hereby grants Amgen's motion to compel as limited below, denies Elanex's motion for a discovery conference, grants Amgen's motion to disqualify Merckle's attorneys, and strikes Elanex's motion to stay because that motion is now moot.

### I

The subject of this lawsuit is Patent Number 4,703,008 (the " '008 patent") issued to Dr. Fu Kuen Lin, a scientist employed by Amgen. The subject matter of the '008 patent is erythropoietin ("EPO"), which is a protein that stimulates the production of red blood cells. EPO is used to treat anemia in patients who suffer from kidney failure.

Dr. Lin first cloned and isolated the DNA sequence coding for human EPO in 1983. Lin and Amgen filed for a patent, which was granted on October 27, 1987. On that date, Amgen brought a suit against Chugai Pharmaceutical Co. and others, claiming *inter alia* patent infringement. *See Amgen, Inc. v. Chugai Pharmaceutical Co.*, 13 U.S.P.Q.2d 1737, 1989 WL 169006 (D.Mass.1989). The district court upheld many of the claims in the '008 patent, and the defendants appealed. On appeal, the Federal Circuit affirmed in part and reversed in part. *See Amgen Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200 (Fed.Cir.), *cert. denied*, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991). While opposing a petition for certiorari brought before the United States Supreme Court, Amgen consulted with the law firm of Mayer Brown & Platt ("MBP").

In 1985, Elanex contracted with the University of Washington to obtain an EPO producing DNA sequence and host cells that the University had prepared. Amgen brought this suit claiming that Elanex's actions are an infringement of its patent in violation of 35 U.S.C. § 271(a). In addition, Amgen alleges that Elanex has induced others to infringe its patent in violation of 35 U.S.C. § 271(b). Amgen seeks damages and injunctive relief. Elanex contends that it has not made, used, or sold any infringing material in the United States during the term of the patent and that therefore it cannot be found to have infringed the patent.

### II

The first motion before the Court involves the scope of discovery. Amgen moves to compel production of answers, documents, and requests for admission. Amgen summarizes its interrogatories as follows:

1. Identification of entities with which Elanex has relationships relating to EPO and EPO producing host cells.

2. Description of manufacturing processes by which Elanex has prepared or made host cells for producing EPO.

3. Identification of places and dates where Elanex has made EPO from host cells.

4. Status of Elanex's applications, and those of its licensees, for governmental approval of its EPO world-wide.

5. Past and present locations of Elanex's EPO producing host cells.

6. Current status of Elanex's EPO producing host cells.

7. The corporate structure of Elanex.

Plaintiff's Memorandum in Support of the Motion to Compel at 8–9. Amgen also seeks discovery of documents in Elanex's possession regarding similar subject matter. *See id.* at 9–10. Finally, Amgen sought admissions regarding the process by which Elanex produced its EPO (which is known as "Hemax"). *See id.* at 11–12. Elanex has not

produced any of the requested information and now claims that the discovery requested is "over length, over broad and unduly complicated and require[s] extended explanation." Elanex's Memorandum in Opposition of the Motion to Compel at 1–2.

The scope of discovery is defined by Federal Rule of Civil Procedure 26(b). Pursuant to that rule, information not admissible at the trial may be discovered if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). To be discoverable, however, information must be relevant to the subject matter of the pending action. Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947)).

In this case, Amgen claims that Elanex (1) infringed the '008 patent, and (2) induced others to infringe the '008 patent. The infringement of a patent statute reads in pertinent part as follows:

(a) Except as otherwise provided in this title, whoever without authority *makes, uses or sells any patented invention, within the United States during the term of the patent* therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

35 U.S.C. § 271 (emphasis added). Elanex points to the emphasized language of subsection (a) to argue that the scope of discovery is quite limited and that the discovery requested is outside of that narrow scope.

In light of the foregoing discussion, the Court hereby grants Amgen's motion to compel. The information to be produced, however, is limited in scope to that information calculated to lead to admissible evidence of (1) whether Elanex made, used or sold EPO within the United States during the term of the '008 patent, and (2) whether Elanex induced others to infringe the '008 patent. This ruling makes moot Elanex's motion to stay discovery, which is stricken.

## III

■ The next motion before the Court also concerns the conduct of discovery. Elanex's motion to schedule a discovery conference is largely made moot by the immediately preceding ruling on Amgen's motion to compel. One issue remains before discovery can begin in earnest: a protective order must be instituted because much of the information that Amgen seeks is confidential research and proprietary commercial information.

Since the filing of this motion, the parties negotiated a protective order that resolves all issues but one: Whether Amgen's in-house counsel should be given access to all of the discovery. Elanex contends that Amgen's in-house counsel should not be given access confidential information such as "all information pertaining to the technology of [Elanex's] invention and the identity of contract parties and financial details pertaining to Elanex EPO related transactions...." Elanex's Reply Brief at 5. Elanex proposes that two levels of information be established—confidential and confidential/restricted—and that Amgen's in-house counsel be restricted from receiving only the latter type of information. Amgen argues that its in-house counsel need access to all information to adequately present its case. Amgen asserts that its in-house counsel are officers of the Court who are aware of their obligations to not divulge confidential information to Amgen and that safeguards have been instituted to prevent such a breach. Amgen concludes that access should not be restricted.

The parties cite two cases discussing in-house counsel's access to confidential information: *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 198, 121 L.Ed.2d 141 (1992); and *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed.Cir.1984). In *Brown Bag*, the Ninth Circuit viewed the in-house counsel access to confidential information as a balance of interests of the parties. On the one hand, a party seeking discovery is entitled to all information that is "reasonably calculated to lead to the discovery of admissible evidence.'" *Brown Bag*,

960 F.2d at 1470 (quoting Fed.R.Civ.P. 26(b)(1)). On the other hand, the responding party is entitled to be free from an " 'undue burden' in discovery, including protection from misuse of trade secrets by competitors." *Id.* (citing Fed.R.Civ.P. 26(c)).

In *Brown Bag,* Brown Bag sued Symantec and Friend for copyright and trademark infringement. Initially, Brown Bag was represented by outside counsel, who along with the other counsel stipulated to measures to protect Symantec's and Friend's trade secrets. When Brown Bag's outside counsel withdrew, Brown Bag's newly hired in-house counsel entered an appearance, and Symantec moved for a protective order prohibiting Brown Bag's counsel from accessing documents that would have been available to its outside counsel. After conducting an evidentiary hearing, the magistrate granted the order, which allowed access by Brown Bag only through an outside consultant. After summary judgment was granted in Symantec's favor, Brown Bag appealed.

The Ninth Circuit adopted the analysis set forth in *U.S. Steel,* which discussed the differences between outside and in-house counsel with regard to protective orders.

> The *U.S. Steel* court cautioned against arbitrary distinctions based on type of counsel employed, noting that in practice the risk of inadvertent disclosure of trade secrets obtains equally for both kinds of counsel. The *U.S. Steel* court concluded that, to evaluate the risk of inadvertent disclosure, a court should examine the factual circumstances of *any* counsel's relationship to the party demanding access. A crucial factor in the *U.S. Steel* case was whether in-house counsel was involved in "competitive decisionmaking"; that is, advising on decisions about pricing or design "made in light of similar or corresponding information about a competitor."

*Brown Bag,* 960 F.2d at 1470 (citations omitted). The Court then restated the analysis as follows:

> Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or

retained. Further, the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders.

*Id.*

In upholding the magistrate's decision to exclude in-house counsel from Symantec's trade secrets, the Court noted that the magistrate held an extensive evidentiary hearing. At that hearing, Symantec described the sensitive nature of its trade secrets and the harm that could occur from inadvertent disclosure. Brown Bag did not dispute that harm but reassured the magistrate of the professional integrity of its in-house counsel and the safeguards established to protect against inadvertent disclosure. Notwithstanding that reassurance, the magistrate ruled that access by Brown Bag's in-house counsel should be restricted. On appeal, the Ninth Circuit agreed:

> The magistrate expressly credited in-house counsel's integrity and good faith. The magistrate had to consider, however, not only whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents. As the *U.S. Steel* court suggested, the magistrate therefore inquired into counsel's responsibilities as Brown Bag's sole legal advisor and personnel manager. Brown Bag's counsel stated that he was hired just a few weeks prior to the hearing, that he was one of thirteen or fourteen employees, and that he did not yet know the duties of fellow employees. Brown Bag's counsel agreed that he was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment.

> From this testimony, the magistrate reasonably concluded that Brown Bag's counsel's employment would necessarily entail advising his employer in areas relating to Symantec's trade secrets. Knowledge of Symantec's trade secrets would place in-house counsel in the "untenable position" of having to refuse his employer on a host of contract, employment, and competitive

marketing decisions lest he improperly or indirectly reveal Symantec's trade secrets.... Brown Bag's in-house counsel was thus involved in the kind of "competitive decisionmaking" that counsels against disclosure under the *U.S. Steel* analysis. *Brown Bag,* 960 F.2d at 1471.

The parties here assert arguments similar to those advanced in *Brown Bag.* While acknowledging that Amgen's in-house counsel profess not to be involved in Amgen's competitive decision making, Elanex contends that in-house counsel cannot seal off secrets learned during this litigation. Elanex contends that Amgen has a sizeable cadre of outside lawyers that makes access to confidential material by in-house counsel unnecessary. Finally, Elanex contends that their proposed order allows access upon request (and after an opportunity to object). Amgen contends that in-house counsel need access to properly supervise trial counsel and to evaluate their case. Amgen notes that in-house counsel are not involved in making competitive decisions, that in-house counsel advise Amgen on legal issues, that in-house counsel have acted under protective orders in similar litigation, and that in-house counsel would maintain the confidentiality of any documents to which they had access. *See* Affidavits of Odre and Watt.

The instant case is distinguishable from *Brown Bag.* In-house counsel in the instant case, unlike counsel in *Brown Bag,* are not involved in competitive decision-making, which is arguably the determinative factor in this analysis. Accordingly, the Court denies Elanex's motion to enter its protective order.

## IV

■ The final motion pending before the Court is Amgen's motion to disqualify MBP as counsel for Merckle. Citing the Washington Rules of Professional Conduct (in particular, Rules 1.9 and 1.10), Amgen contends that MBP's prior representation of Amgen during previous litigation concerning the '008 patent creates a conflict of interest in the

current litigation. Amgen concludes that MBP should be disqualified. Merckle admits that MBP represented Amgen in the prior matter, but denies that there is any conflict of interest. Merckle contends that MBP's prior work for Amgen was "wholly unrelated" to the scope of its present work for Merckle. Further, Merckle asserts that no confidences were shared between Amgen and MBP that are relevant to the present action. Even if any such information was divulged, Merckle contends that a "screen" has been erected to protect against disclosure of any confidential information allegedly gained during the prior representation of Amgen.

■ This Court is primarily responsible for controlling the conduct of lawyers practicing before it. *See, e.g., Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980). In deciding whether to disqualify counsel, the Court looks to the local rules regulating the conduct of the members of its bar. *United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp.,* 637 F.Supp. 1556, 1560 (W.D.Wash. 1986). Attorneys practicing in this district shall abide by the Rules of Professional Conduct promulgated by the Washington State Supreme Court. Local Rule W.D.Wash. 2(e)(1).[1]

The Washington Rules of Professional Conduct (the "RPCs") provide:

**Conflict of interest; former client.** A lawyer who has formerly represented a client in a matter shall not thereafter: (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or (b) Use confidences or secrets relating to the representation to the disadvantage of the former client ...

Wash. RPC 1.9. Comment 8 to Rule 1.9 of the similarly-worded ABA Model Rules of Professional Conduct indicates that in any question of disqualification, the burden of

---

1. Although the attorneys at MBP are not members of the Washington State Bar, there is no dispute over their duty to abide by the rules of this Court. Moreover, the preface to the Local Rules of the W.D. of Wash. provides that, "The following rules ... shall bind all parties to proceedings before this court."

proof should rest upon the firm whose disqualification is sought.

Washington RPC 1.10 also applies to this case, and provides in relevant part:

**Imputed disqualification; general rule.** (a) Except as provided in section (b), while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule[s] ... 1.9.... (b) When a lawyer *becomes associated with a firm*, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer ... or a firm with which that lawyer *was associated*, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired confidences or secrets ... provided that the prohibitions on the firm shall not apply if: (1) The personally disqualified lawyer is screened by effective means from participation in the matter and is apportioned no part of the fee therefrom; (2) The former client ... receives notice of the conflict and the screening mechanism ... (3) The firm is able to demonstrate by convincing evidence that no confidences or secrets that are material were transmitted by the personally disqualified lawyer before implementation of the screening mechanism....

Wash. RPC 1.10 (emphasis added). The rules also establish that a presumption of shared confidences may be rebutted if the disqualified lawyer serves on his or her former firm and former client an affidavit guaranteeing that such confidences will not be divulged to the new client. *Id.*

The Ninth Circuit applies a similar test in determining whether a law firm should be disqualified. "The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation." *Trone,* 621 F.2d at 998. "Substantiality is present if the factual contexts of the two representations are similar or related." *Id.*

▮ Whether to disqualify an attorney is within this Court's discretion, and will be reversed on appeal only for an abuse of discretion. *Id.* Unless the opposing party can present evidence that clearly and effectively rebuts a presumption of shared confidences, a motion to disqualify, if brought in good faith, should be granted. *Lord Elec.,* 637 F.Supp. at 1564.

Under either of the two tests, MBP must be disqualified. While Merckle goes to some length to point out that MBP was never the counsel of record for Amgen in the Supreme Court litigation, the Court believes that the scope of that representation was broad enough to bring MBP under the guidelines of Rule 1.9. The question then becomes whether the current litigation is "substantially related" to the current litigation. MBP does not dispute its representation of Amgen; rather, the controversy is over the scope of that representation. Although the issues in the present litigation are different from the issues in the prior litigation, the subject matter of both—the '008 patent—is identical. Accordingly, the former representation is substantially related to the current representation. *See Trone,* 621 F.2d at 998.

Citing *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 479 F.Supp. 465 (E.D.La. 1979); and *People v. Rogers,* 101 Ill.App.3d 614, 56 Ill.Dec. 955, 428 N.E.2d 547, 549 (1981), Merckle argues that the appellate relationship is different from a trial preparation relationship, and that therefore the two matters are not substantially related. Merckle's argument is not convincing. The defendant makes no attempt to dispute the fact that MBP had access to Amgen's files and confidential information regarding the first patent litigation at the lower court level, as well as Amgen's strategies for appeal. Additionally, in the *Domed Stadium* decision, upon which Merckle bases much of its argument on this issue, the court questioned whether there was ever a "former client" relationship. 479 F.Supp. at 468. Likewise, the *Domed Stadium* court found that in the process of prosecuting the appeal, absolutely no confidential information was exchanged with the attorneys in question. *Id.* The instant case is distinguishable because here, unlike in *Domed Stadium,* a former client relationship has been established. Moreover, there is evidence that MBP possessed

confidential information relevant to the Amgen litigation. For example, MBP attorneys sent Amgen a ten-page memorandum marked "PRIVILEGED & CONFIDENTIAL ATTORNEY/CLIENT COMMUNICATION" and "ATTORNEY WORK PRODUCT." This fact alone suggests that confidential information passed between Amgen and MBP.

 Even in the absence of evidence that confidential information was shared, a court may presume that confidences have been shared if the scope of representation of the former client encompasses issues raised in litigation with the current client. *Trone,* 621 F.2d at 999.

> The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.

*Id.* (citations omitted). Attorneys who work in the same firm are presumed to share confidences; accordingly, if an individual attorney in a firm is disqualified, the entire firm is also disqualified, even if the other members were never exposed to any confidences of the former client. *Id.* The presumption of shared confidences may be rebutted by screening the personally disqualified attorney if he or she has changed firms. *See Lord Elec.,* 637 F.Supp. at 1565.

Merckle insists that even if confidences were disclosed by Amgen to the two MBP attorneys working on the case, these shared confidences would be rebutted by the screen set up between Shapiro, Englert, and the rest of the firm. The cases cited by Merckle for this proposition are distinguishable, however, because they involve lawyers who have changed firms. *See, e.g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2nd Cir.1975), *overruled on other grounds by Armstrong.v. McAlpin,* 625 F.2d 433 (2nd Cir.1980); *Lord Elec.,* 637 F.Supp. at 1559. Considering the language in the RPCs, and the law cited above MBP cannot be allowed to screen off two lawyers who represented Amgen and who are still associated with the firm.

Even the cases cited by Merckle support disqualification of MBP in this case. The *Silver Chrysler* court, for example, noted that the right to counsel of choice is of secondary importance when compared with "maintaining the highest standards of professional conduct and scrupulous administration of justice." 518 F.2d at 757 (citations and internal quotation marks omitted). Other courts have echoed this principle. *See, e.g., Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1267–68 (7th Cir.1983) (holding that a screen may be used when a lawyer changes jobs and the new firm represents an adversary of a client of the former firm, but that the *same firm* cannot switch sides on a substantially related matter, no matter what screens it sets up). In accordance with the foregoing discussion, Amgen's motion to disqualify MBP as counsel for Merckle is granted.

**V**

In conclusion, the Court hereby (1) GRANTS Amgen's motion to compel but limits the information to be produced to that information relevant to whether Elanex made, used or sold EPO within the United States during the patent's term or whether Elanex induced others to infringe the '008 patent; (2) DENIES Elanex's motion for a discovery conference and DENIES Elanex's motion to limit access of Amgen's in-house counsel to certain documents; (3) STRIKES Elanex's motion to stay discovery because that motion is MOOT; and (4) GRANTS Amgen's motion to disqualify MBP.