**PARKLAND CORPORATION, a Montana Corporation, Plaintiff,**

v.

**MAXXIMUM COMPANY, an Idaho Corporation; David B. Tower, an individual; Quintex Corporation, an Idaho Corporation; J. Robert Tullis, an individual; and Duane Stueckle, an individual, Defendants.**

No. CV 94–338–S–LMB.

United States District Court, D. Idaho.

March 29, 1996.

---

Ken J. Pedersen, Charles R. Clark, Boise, ID, for plaintiff Parkland Corp.

William R. Snyder, Boise, ID, Steven R. Ormiston, Boise, ID, for defendants Tullis and Quintex Corporation.

M. Allyn Dingel, Jr., Bradlee R. Frazer, Boise, ID, for defendants Maxximum Co. and Stueckle.

## MEMORANDUM DECISION AND ORDER

BOYLE, United States Magistrate Judge.

Currently pending before the Court is Defendants' Motion to Disqualify Attorney Ken Pedersen and Associates and for Supplemental Protection (Docket No. 21).

Also currently pending before the Court, but which will not be addressed herein, are the Motion to Dismiss by Quintex and J. Robert Tullis as Against Parkland Corporation (Docket No. 40), Defendants' Motion for Summary Judgment (Docket No. 46), Plaintiff's Application for Entry of Default against David B. Tower (Docket No. 52), Defendant Maxximum's Motion to Set Aside Default or, in the Alternative, to Enforce Settlement Agreement (Docket No. 59), Plaintiff's Motion to Compel Discovery Pursuant to Subpoena Directed To Morris Grigg (Docket No. 84), and Plaintiff's Motions to Compel (Docket Nos. 85 & 87).

Having carefully reviewed the record, including supplemental affidavits and submissions of the parties and counsel to the extent they are limited to the issue allowed to be supplemented, considered oral argument of counsel, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

### BACKGROUND

The parties to the instant action are Plaintiff, Parkland Corporation, a Montana corporation, and Defendants, Maxximum Company, an Idaho Corporation, David B. Tower, Maxximum's President, Quintex Corporation, an Idaho corporation, J. Robert Tullis, and Duane Stueckle, Chief Executive Officer for Maxximum Company.

In September 1988, Kevin McCann, the sole shareholder of Plaintiff in this action, contacted Quintex Corporation and indicated that he held a patent which related to a product Quintex was manufacturing for Alturas Corporation. Christiansen Aff., ¶ 2 (Docket No. 24). Subsequently, Quintex retained the services of attorney Paul Horton ("Horton") for the purpose of advice and counsel regarding the merits of McCann's claim. *Id.* at ¶ 3.

In August 1994, attorney Ken J. Pedersen ("Pedersen") purchased the assets of Horton's practice. Pedersen Aff., ¶ 3 (Docket No. 26). On December 7, 1994, Defendant Duane Stueckle advised his attorney, William R. Snyder ("Snyder"), that he had attempted to reach Horton by telephone on behalf of the Maxximum Company and had instead reached Pedersen's office. Snyder Aff., ¶ 3 (Docket No. 23). Pursuant to their agreement, Horton's phone calls were to be forwarded to Pedersen's office. Agreement, p. 4, Ex. A to Pedersen Aff. (Docket No. 26).

Also pursuant to the purchase agreement between Horton and Pedersen, Pedersen continued to be "willing and able to store, tend to *and work on* the client files of [Horton]." Agreement, p. 2 (emphasis added). The procedure regarding Horton's files is set forth in paragraph 4 of the Agreement, which provides in part:

> [Horton] will turn over to [Pedersen] all [Horton's] client files ... [Horton] will also turn over to [Pedersen] at that time all calendars, data bases, dockets, files and office systems to enable [Pedersen] to conveniently and competently store, *tend to and work on [Horton's] open and closed client files.* [Horton] will provide [Pedersen] with 16 hours of training in [Horton's] office systems and procedures so that an orderly transition may be made. [Horton] will make himself available to [Pedersen] for 1 year from August 6, 1994 to assist [Pedersen] with questions about [Horton's] clients so that an orderly transition may be made.

Agreement, ¶ 4 (emphasis added). Horton's closed files were to be kept "confidentially by [Pedersen] for three years," and Pedersen agreed not to "open, view or copy them except at the instructions of the client." *Id.* at ¶ 5. Pedersen has testified in sworn statements that he has "fully complied with these restrictions." Pedersen Aff., ¶ 4.

On August 3, 1994, Plaintiff brought this action alleging that Defendants infringed upon the McCann patent. Plaintiff retained Pedersen and his firm to represent it in this action. In May 1995, Pedersen notified Defendants of his purchase of Horton's practice, and also revealed to Quintex's attorney, Snyder, that he had inadvertently been in possession of the Quintex files which had previously been in Horton's office. Snyder Aff., ¶ 2 (Docket No. 23). Pedersen also notified Snyder at that time that he had returned the files to Horton in Phoenix. *Id.*

Defendants now assert that Pedersen and his associates should be disqualified as attorneys for Plaintiff because he purchased the practice of Defendants' former attorney and accepted possession of Horton's files, including Quintex, and thus assumed a professional responsibility and duty not to bring an action adverse to Horton's prior clients, particularly in the unique circumstances presented here where the clients and legal issues involved are virtually identical.

## II.

### MOTION TO DISQUALIFY

In their motion to disqualify, Defendants Quintex and J. Robert Tullis seek an order requiring Pedersen and his associate to remove themselves from further representation of Plaintiff Parkland, and to further provide for protection of Defendants if it is ascertained that a breach of confidentiality occurred. *See* Motion, p. 1 (Docket No. 21). Defendants Maxximum Company and Duane Stueckle have also joined in this motion to disqualify. These motions are based on various legal authorities, case law from several jurisdictions, the Idaho Rules of Professional Conduct, and the unique facts presented here.

It is clear that "[i]n deciding whether to disqualify counsel, the Court looks to the local rules regulating the conduct of the members of its bar." *Amgen v.*

*Elanex Pharmaceuticals, Inc.,* 160 F.R.D. 134, 139 (W.D.Wash.1994) (citations omitted). In this instant action, the Court must also consider the Idaho Rules of Professional Conduct as adopted and interpreted by the Supreme Court of Idaho. Regarding motions to disqualify counsel in Idaho generally, it is clear that "[t]he moving party has the burden of establishing grounds for the disqualification." *Weaver v. Millard,* 120 Idaho 692, 697, 819 P.2d 110, 115 (Ct.App.1991) (citing *Alexander v. Superior Court,* 141 Ariz. 157, 685 P.2d 1309, 1313 (1984); *Woodard v. District Court,* 704 P.2d 851 (Colo. 1985)). In deciding whether or not to disqualify counsel, "[the] goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process. Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client." *Id.* (citations omitted).

■ In support of their motion to disqualify, Defendants cite the Court to Idaho Rule of Professional Conduct 1.9(a), which provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

In the instant action, had Plaintiff sought representation directly by Horton, it is clear that he or members of his firm would obviously have been precluded from such representation absent approval from his former clients. The undisputed reason for this is that Horton represented Defendants in this very same patent dispute, regarding substantially the same issues and substantially the same parties, and Parkland's interests are directly adverse to the interests of Defendants in the matters upon which Horton was hired to consult and provide legal service. However, the specific issue in the instant action is somewhat different and requires the Court to determine whether Horton's disability to represent Plaintiff here should be imputed to Pedersen and his associates. After

careful consideration, the Court concludes that it should.

Idaho Rule of Professional Conduct 1.10 addresses imputed disqualification generally and provides in part:

When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer, and not currently represented by the firm, unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

Pedersen argues that he and Horton were never associated in the same firm, and because he never represented Quintex or Maxximum, and never opened, reviewed or copied the Quintex files which he retained possession of after his purchase agreement with Horton, he should not be disqualified from representing Plaintiff in this action.

Regarding the relationship between Horton and Pedersen, Pedersen has stated "I did not assume the practice of Mr. Horton...." Pedersen Aff., ¶ 8 (Docket No. 26). However, a careful reading of the written agreement between Horton and Pedersen raises substantial questions in this regard. The agreement provides for Pedersen to take physical possession of all of Horton's open and closed files, and provides for Pedersen to assume professional responsibility under certain specified circumstances:

2. Retiring attorney will notify all open clients of his retirement and this agreement ... Such notification shall be in writing ... and will include:

. . . . .

(3) notice of the fact that the client's consent to the transfer of the custody of the file will be presumed if the client does not otherwise object within ninety (90) days of receipt of the notice.

3. Continuing Attorney shall monitor and maintain and shall comply with all filing deadlines in open files in which the client has hired Continuing Attorney....

4. Retiring Attorney will turn over to Continuing Attorney all Retiring Attorney's client files ... calendars, data bases, dockets, files and office systems ... Retiring Attorney will make himself available to Continuing Attorney for 1 year from August 16, 1994 to assist Continuing Attorney with questions about Retiring Attorney's clients....

Agreement, pp. 3–4, Ex. A to Pedersen Aff. (Docket No. 26). After a careful and thorough review of the agreement it is clear that Pedersen did not merely purchase office space or equipment from Horton, but that he was to actively assume, directly or indirectly, a portion of Horton's practice, to essentially step into the shoes of Horton regarding representation of Horton's former clients who consented to such representation, and take responsibility for the possession, maintenance and preservation of Horton's files. In the process of becoming the successor in interest to at least a portion of Horton's practice, Pedersen assumed many of Horton's professional obligations, duties and responsibilities. Among those listed in the agreement between the parties is Pedersen's duty to meet deadlines in Horton's open cases which he was to assume, and his duty to present clients with new power of attorney documents revoking Horton's prior power of attorney and granting Pedersen power of attorney in those open files which Pedersen was to assume. Regarding closed files, Pedersen assumed the responsibility of maintaining the confidentially of the information contained therein for a period of three years. After a careful review of the record, and in light of controlling legal principles, the Court finds implied in the assumption of all of these responsibilities, a presumed duty of Pedersen not to represent clients whose interests conflict with those of Horton's former clients, absent the express consent of the client.

Furthermore, the Court is absolutely convinced that the proper question to be asked in determining whether or not to disqualify counsel is whether there was a *possibility* of the breach of a confidence, and not whether an actual breach occurred. As the court stated in *Amgen,*

> Even in the absence of evidence that confidential information was shared, a court may presume that confidences have been shared if the scope of representation of the former client encompasses issues raised in litigation with the current client. *The test does not require the former client to show that actual confidences were disclosed.* That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. *It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.*

*Amgen,* 160 F.R.D. at 141 (citing *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980)) (emphasis added). In the instant action, Horton's files were taken into the personal custody and possession of Pedersen. While Pedersen states, and the Court does not question, that he did not read or open such files, "it is the possibility of a breach of confidence, not the fact of the breach, that triggers disqualification." *Id.* The facts in the instant action are that Pedersen had possession of the Quintex file from Horton's office in his storage space. While Pedersen did not ever have possession of Maxximum's files, Quintex was the majority shareholder in Maxximum Company in 1989, during the time Horton represented both companies that are now the very same parties defending this instant action. *See* Stueckle Aff., ¶ 3 ("Quintex owned 80 percent of the Maxximum Company stock").[1] Furthermore, the issue in the instant litigation against the two

---

1. Maxximum Company was given the opportunity to augment the record after the March 21, 1996 hearing in this matter. The Stueckle Affidavit is part of that supplemental submission. The Court notes at this point that Plaintiff was also given an opportunity to augment the record in response to Maxximum's submission of supplemental materials. To the extent that the Court received materials in Plaintiff's March 26, 1996, supplemental submissions which go beyond replying to Maxximum's submissions, the Court has not considered such submissions.

companies, whether McCann owned the patent at issue, is virtually identical. Therefore, the fact that Pedersen had access to the Quintex file also presents a possibility of a breach of confidence for Maxximum.

The Court recognizes that disqualification of Pedersen will result in inconvenience and perhaps a hardship to Plaintiff both financially and in obtaining new counsel. However, in balancing all the competing interests, the only remedy which will assure all parties a fair trial is requiring Plaintiff to retain new counsel not burdened with the possibility of breach of confidence. In this regard, the Court has endeavored to reach a solution that is the least burdensome to the client, but that is yet still fair to Defendants. While the Court has attempted to be creative in considering various alternatives to disqualification, the underlying legal principles lead to only one reasonable alternative which will assure that confidence in the judicial process be maintained. In the Court's view, this requires new counsel for Plaintiff.

Attached to Pedersen's affidavit dated December 29, 1995 as Ex. B is a letter dated August 17, 1994 from Horton to Dave Tower, the President of Maxximum Co., a current party Defendant to this instant action. In the Court's view, this letter is particularly compelling. Although an attempt to explain the language utilized by Horton to describe Pedersen's statement to him was made at the hearing conducted on March 21, 1996, the letter from Horton to Tower was submitted by Pedersen specifically for these instant proceedings. In the Court's view, Pedersen is bound by the statement attributed by Horton to him which indicates a clear understanding on his part that accepting the Maxximum file would create a conflict of interest. Such is the clear intent of the law to the extent that actual disclosure of confidences is not required, but it is the possibility of the breach of confidence that triggers disqualification. *Amgen,* 160 F.R.D. at 141 (citing *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980)).

After careful consideration of the instant record and applying controlling legal principles, the only reasonable course which takes into account all of the competing interests requires disqualification. The Court wants to make it clear that it does not feel in any respect that there has been any wrongdoing on the part of Pedersen or his associates. However, it is the acceptance and taking physical possession of the Horton files, and the possibility of breach of confidence that are the compelling factors in the Court's decision.

In making this determination the Court concludes that the extensive discovery already taken will not be wasted or lost. Likewise, the effort to conduct the discovery has already been expended and will still be usable at trial.

Underlying the Court's conclusion that disqualification is required is the concern that parties to litigation must have complete confidence in the judicial process that neither party has the possibility of an unfair advantage and that the case will be presented on a level playing field. If the Court were to allow Pedersen to remain, even assuming as true and that which the Court is satisfied that he has not copied or read what is in the Horton files, it is not possible for Defendants to have confidence in the judicial process. To that extent, the only remedy which will assure and guarantee fairness to all parties and to the judicial process, and to allow all parties the comfort of knowing that the other does not have an unfair advantage, however great or slight, is to require Plaintiff to obtain counsel who has not been exposed to the possibility of breach of confidence. Accordingly, the Court concludes that if Pedersen is to be disqualified from representing Quintex in this action and the individual parties associated with Quintex, that Pedersen should also be disqualified from representing Plaintiff against Maxximum, and the individual Defendants associated with Maxximum in this action. As stated above, and again here in summary conclusion, the reason for across the board disqualification where Pedersen did not have actual physical possession of the Maxximum file is clear. Quintex and Maxximum have a close legal relationship, with the former owning 80% of the latter's stock during the time Horton represented both companies. It is likely under these circumstances that the Quintex files in Pedersen's posses-

sion contained materials or references applicable to Maxximum especially when it is considered that the patent involved when Horton was counsel is the same involved in this current litigation. Finally, it would be impossible to separate at trial the interests of the parties and to guarantee protection of all parties if counsel were not disqualified across the board as to both Maxximum and Quintex.

### III.

### CONCLUSION

The Court has an affirmative duty to preserve the integrity of the judicial process in which it operates. At a time when public confidence in the legal system is waning, it is essential that the courts, and the attorneys practicing before those courts, endeavor to avoid or minimize even the appearance of impropriety in cases submitted to it for determination. While there has been no direct evidence in this action of an actual breach of confidentiality, Pedersen's access to and possession of the Quintex files in itself creates a conflict of interest. The case law is clear that it is the access to confidential material and not the actual use or receipt of that material which leads to or triggers disqualification. Therefore, because Pedersen had access to the Quintex files, and because those Quintex files contained information which is at the heart of the instant action for both Quintex and Maxximum, Ken J. Pedersen and his associates, including Charles R. Clark, as attorneys in this proceeding, should be and are hereby disqualified as counsel of record in this action.

### IV.

### ORDER

IT IS HEREBY ORDERED that Defendants' Motion to Disqualify Attorney Ken Pedersen and Associates and for Supplemental Protection (Docket No. 21) is GRANTED IN PART and DENIED IN PART. The Court will therefore disqualify attorney Ken J. Pedersen and his associates, including Charles R. Clark, from further representing Plaintiff in this pending action. However, because there is no direct evidence that any breach of confidentiality has actually oc-

curred, the Court will deny Defendants' motion to the extent that they seek supplemental protection.

IT IS FURTHER ORDERED that these proceedings be stayed for thirty (30) days from this date in order to allow Plaintiff to obtain new counsel. The hearing previously scheduled to commence on April 2, 1996 is VACATED.

SO ORDERED.