**VOLVO PENTA OF THE AMERICAS, INC., Plaintiff,**

v.

**BRUNSWICK CORPORATION, Defendant.**

No. 2:98CV1473.

United States District Court, E.D. Virginia, Norfolk Division.

May 13, 1999.

---

Conrad M. Shumadine, Michael Robert Katchmark, Willcox & Savage, P.C., Norfolk, VA, Robert L. Green, Jr., Howrey & Simon, Washington, DC, for plaintiff.

Hunter W. Sims, Jr., Stephen E. Story, Kaufman & Canoles, Norfolk, VA, Stephen C. Neal, Benjamin K. Riley, James Donato, Anita F. Stork, Cooley Godward LLP, San Francisco, CA, for defendant.

## ORDER

PRINCE, United States Magistrate Judge.

In this discovery dispute, the plaintiff, Volvo Penta of the Americas, Inc., has agreed to deliver confidential marketing and business plan information to defendant Brunswick Corporation's retained counsel. The parties also agree that a protective order should ensure that personnel from Brunswick, one of Volvo Penta's "hostile" competitors, cannot review this information. Volvo Penta, however, further wishes to restrict Roya Behnia, Esq., a member of Brunswick's in-house counsel, from having access to this information. For reasons discussed below, the Court will enter a protective order, but will also grant Ms. Behnia access to the confidential materials at issue.

In opposing Volvo Penta's motion, Brunswick has offered, among other materials, an affidavit from Ms. Behnia herself. Ms. Behnia avers that, as a member of Brunswick's legal department, her "responsibilities include the retention and supervision of Brunswick's outside counsel." (Aff. of Roya Behnia at ¶ 3.) She also states that she has "no responsibility for and give[s] no advice to management of Brunswick about competitive sales, marketing, pricing, product design, development or research *** employment matters or scientific or technical matters." (Id. at ¶ 4.) Volvo Penta does not dispute or attempt to cast doubt on these representations.

Ms. Behnia's affidavit also asserts that she is responsible for "supervising outside counsel's activities in this litigation and for assisting in the preparation of this action for trial." (See id. at ¶ 5.) At oral argument, Brunswick further indicated that it needs Ms. Behnia's input in this litigation to help it

make quick and effective pretrial decisions due to the rapid discovery and trial schedule set by the Norfolk Division of the Eastern District of Virginia; it also reiterated at the hearing that Behnia does not participate "in any competitive decisionmaking." Other courts, according to Brunswick, have previously granted Ms. Behnia access to confidential information otherwise covered by a protective order.

### Discussion

■ As noted, Volvo Penta has agreed to submit confidential business data to its competitor Brunswick's outside counsel, but requests a protective order that would withhold this information from Brunswick's in-house counsel and employee, Ms. Behnia. Under FED.R.CIV.P. 26(c)(7) (1999), courts may fashion orders protecting from discovery "a trade secret or other confidential research, development, or commercial information." Perhaps in recognition of the need for broad judicial powers in supervising discovery, the Federal Rules of Civil Procedure only indicate that protective orders should issue "for good cause shown" and when "justice [so] requires." See FED.R.CIV.P. 26(c); see also Carpenter Tech. Corp. v. Armco, Inc., 132 F.R.D. 24, 26 (E.D.Pa.1990). Otherwise, a party has "no absolute privilege for trade secrets and similar confidential information." See In re Indep. Serv. Org. Antitrust Litig., 162 F.R.D. 355, 356 (D.Kan.1995).

Given this broad mandate, the courts, in turn, have recognized the competing interests that arise when deciding whether a protective order allowing retained counsel access to confidential business data should nevertheless prohibit a competitor's in-house counsel from reviewing that same data. See, e.g., Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir.1992). Accordingly, to harmonize the interests of free and open discovery with the need to protect parties from the misuse of trade secrets by competitors, the courts have crafted a balancing test to determine if an opposing party's in-house counsel can access its confidential data. Id.; Amgen, Inc. v. Elanex Pharm., Inc., 160 F.R.D. 134, 137–38 (W.D.Wash.1994).

■ This Court has not found any published authority that definitively lists, or claims

to list, all the relevant factors in this balancing test. Certain notable decisions, however, have indicated that a court should consider (1) the nature of the litigation and whether that litigation presents difficult or complex issues or claims; (2) whether alternative discovery measures would assist the in-house attorney seeking access to the confidential information in the development of the litigation; and (3) whether that in-house attorney is involved in the employer-litigant's "competitive decisionmaking." See Brown Bag Software, 960 F.2d at 1470; see also Amgen, Inc., 160 F.R.D. at 138.

"Competitive decisionmaking" refers to the in-house counsel's role, if any, in making company decisions that affect contracts, marketing, employment, pricing, product design, or "any or all of the client's decisions ... made in light of similar or corresponding information about a competitor." U.S. Steel Corp. v. U.S., 730 F.2d 1465, 1468 note 3 (Fed.Cir.1984); accord Brown Bag Software, 960 F.2d at 1470; Matsushita Elec. Indus. Co. v. U.S., 929 F.2d 1577, 1579 (Fed.Cir. 1991); Amgen, Inc., 160 F.R.D. at 138; Glaxo Inc. v. Genpharm Pharm., Inc., 796 F.Supp. 872, 874 (E.D.N.C.1992); Carpenter Tech. Corp., 132 F.R.D. at 27. Contrary to Volvo Penta's brief, several decisions suggest that "competitive decisionmaking" often constitutes a "crucial factor" in conducting this analysis. See Brown Bag Software, 960 F.2d at 1470; Amgen, Inc., 160 F.R.D. at 138–39 (competitive decisionmaking is "arguably the determinative factor in this analysis"); Glaxo Inc., 796 F.Supp. at 874 (the "decisive factor in denying in-house counsel access is whether the in-house counsel is involved in 'competitive decisionmaking'"); Carpenter Tech. Corp., 132 F.R.D. at 27 (in-house counsel's access to confidential information "should turn on the in-house counsel's involvement in 'competitive decisionmaking'").

■ In this case, Brunswick contends that because Ms. Behnia has no involvement with its "competitive decisionmaking," she should have the same access to Volvo's confidential information as Brunswick's outside counsel has. Further, as mentioned above, Brunswick noted at oral argument that because of

the brisk pace of litigation in the Eastern District of Virginia's "Rocket Docket," it would need Ms. Behnia to help make quick tactical decisions in the instant case. The caselaw applying this balancing test supports Brunswick's position.

For example, in *U.S. Steel Corp.*, 730 F.2d at 1468–69, the Federal Circuit found the lower court erred when it denied in-house counsel access to confidential information based solely on that attorney's "general position" within his employer-client's corporation. The court indicated that because in-house attorneys, like any other retained attorney, must serve as "officers of the court" and must abide by the "same Code of Professional Responsibility" and ethics, a court could not merely assume that in-house attorneys would allow confidential information to fall into the hands of their employer. *See id.* at 1468. The court also found it "common knowledge" that, like in-house counsel, retained counsel often "enjoy long and intimate relationships" with clients, "including retained counsel's service on a corporate board of directors." *See id.*

The court then emphasized that it had to resolve questions of this sort "on a counsel-by-counsel basis," by assessing "each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *Id.* at 1468–69. Ultimately, the court determined that because the case before it involved "extremely complex" litigation that had reached "an advanced stage," and because the in-house attorney there had no role in the party's competitive decisionmaking, it had to vacate the lower court's order denying access to in-house counsel.[1] *Id.*

Here, the Court cannot overlook the unrebutted and sworn assertions that Ms. Behnia has no role whatsoever in Brunswick's competitive decisionmaking, and that Brunswick's outside counsel needs her assistance in developing this litigation in this fast-paced District. *Compare id.* Nor can it overlook the similarities between the instant litigation and *U.S. Steel Corp.* and its progeny, which has done much to make the "competitive decisionmaking" factor the *sine qua non* of the in-house counsel analysis, regardless of other factors that potentially garner in favor of restricting in-house access. *Compare Amgen, Inc.*, 160 F.R.D. at 139 (in-house counsel for party could examine documents covered by protective order even though that party had a "sizeable cadre of outside lawyers" allegedly making in-house review unnecessary, but opposing party conceded that in-house counsel did not participate in any competitive decisionmaking); *Glaxo Inc.*, 796 F.Supp. at 874 (party's in-house counsel of twenty-eight years could examine documents covered by protective order when he attested that he gave no advice to party on "competitive decisions such as pricing, scientific research, sales or marketing"); *Carpenter Tech. Corp.*, 132 F.R.D. at 27–28 (one in-house attorney could examine documents covered by protective order when he averred that he "had absolutely no involvement" in competitive decisionmaking, but another could not when he only averred having "no direct responsibility or authority" in competitive decisionmaking); *Cf. Matsushita Elec. Indus. Co.*, 929 F.2d at 1579–80 (U.S. Court of International Trade erred in denying party's in-house counsel access to "proprietary information" when in-house counsel had "regular contact" with corporate decisionmakers, but also submitted unrebutted affidavit aver-

---

1. While the Court finds *U.S. Steel Corp.* persuasive, it also thinks it somewhat odd that the decision has become, according to many courts and Brunswick, "the leading authority" on this issue. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (Fed.Cir.1992); *Matsushita Elec. Indus. Co. v. U.S.*, 929 F.2d 1577, 1578–79 (Fed.Cir.1991); *Glaxo Inc. v. Genpharm Pharm., Inc.*, 796 F.Supp. 872, 874 (E.D.N.C. 1992) (relying on analysis established by *U.S. Steel Corp.*). The court in *U.S. Steel Corp.* expressly limited its holding to protective orders issued under 19 U.S.C. § 1516a(b)(2)(B), a statu-tory analogue to the Fed R.Civ P. 26 in cases governed by the Court of International Trade. *See* 730 F.2d at 1467 n.2, 1469. And the decision itself seemed to downplay its own significance by using language like: "[w]e hold only that status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *See id.* at 1469. Nonetheless, because of its sound reasoning and the widespread role it has played in developing the law of protective orders, *U.S. Steel Corp.* also demands this Court's attention.

ring that he did not participate in competitive decisionmaking).

For the same reasons, Volvo Penta's view of *Brown Bag Software* does not warrant a contrary result. *See* 960 F.2d at 1470–71. There, unlike here, a party's in-house counsel acted as its "sole legal advisor and personal manager" on "a gamut of legal issues, including contracts, marketing and employment." *Id.* at 1471. The party's former outside counsel in that case also had over six (6) months to develop evidence from the confidential information that in-house counsel wished to examine, and, pursuant to the lower court's order, in-house counsel there could still access confidential information through an "independent consultant," who could deem specific information necessary to pursue the litigation. *Id.* Citing these factors, the Ninth Circuit found no abuse of discretion with the lower court's order denying in-house counsel direct access to the information at issue. *Id.* at 1471–72.

Again, since Brunswick's in-house attorney, Ms. Behnia, has submitted an unrebutted affidavit averring that she does not participate in competitive decisionmaking, and since Brunswick's retained counsel has represented that Brunswick needs her to prepare this litigation, the Court finds *Brown Bag Software* distinguishable from the case at bar. *See* 960 F.2d at 1470–71. Further, the Court declines Volvo Penta's offer to install a procedure whereby Brunswick could request disclosures of "specified confidential documents [to Ms. Behnia] on an as-needed basis." *Compare id.* In this Court's view, doing so could potentially thwart one of the same reasons that favors disclosure to Ms. Behnia: the need for efficient litigation, especially in this District. Otherwise, every time Volvo Penta's proposed procedure failed to resolve a dispute in one party's favor, the losing party might take any number of issues back to the courts, making the proposed procedure an instrument of delay.

■ Volvo Penta offers three other appealing arguments, but none of them overcome the weight and rationale of the cases discussed earlier. First, it emphasizes both the "extremely sensitive nature of the information" Brunswick's in-house counsel seeks access to, and that Brunswick "has not established that disclosure of such competitively sensitive information to in-house counsel is necessary to defend this case." This Court, however, has not found any published caselaw that includes in the relevant balancing test a requirement that in-house counsel prove the need for the protected information at issue beyond the liberal standard established in FED.R.CIV.P. 26(b)(1).

And while other litigants in other cases have, like Volvo Penta, stressed "the extreme sensitivity" of the information at issue, no decisions have apparently relied on this argument as grounds for granting or denying in-house access. *See, e.g., Brown Bag Software,* 960 F.2d at 1470–71 (relying on "competitive decisionmaking" analysis and other factors discussed above); *Amgen, Inc.,* 160 F.R.D. at 138–39 (noting that *Brown Bag Software* litigant described "sensitive nature of its" confidential business information, that litigant in this case advanced similar arguments, but relying on the "competitive decisionmaking" factor to decide the matter). Further, the Court hesitates to resolve a discovery dispute based on the uncertain calculus of how sensitive a litigant perceives its confidential data is; attempting to objectively gauge that sensitivity at this preliminary stage of litigation would not lend itself to efficient or predictable judicial decisionmaking.

■ Second, Volvo Penta contends that in another case tried in a different district, Brunswick subpoenaed "similar documents" from Volvo Penta but, unlike here, Brunswick agreed to withhold these documents from its in-house counsel. Volvo Penta indicates that "[t]he fact that Brunswick did not need in-house access to Volvo Penta's confidential information to defend that case contradicts its demand for in-house access here."

This argument also has much surface appeal, but, ultimately, the Court thinks it significant that Volvo Penta was not a party to this earlier litigation. As Brunswick noted at oral argument, the issues and need for in-house scrutiny may change when the documents come from a party-opponent as opposed to a witness. In addition, while the Court understands why this apparent incon-

sistency would raise eyebrows and concerns about Brunswick's motives, it also believes the same ethical and professional dictates discussed in *U.S. Steel Corp.* adequately safeguard against the risk of disclosure to other Brunswick personnel.

Third, at oral argument, Volvo Penta cited, quoted from, and relied upon *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1349–51 (D.C.Cir.1980), a case that the Court finds anomalous and distinguishable from the instant matter. There, a corporation attempted to purchase a competitor's business but, before it could complete the transaction, the federal government began an administrative action charging the corporation with various antitrust violations. *Id.* at 1337–38. After a district court preliminarily enjoined the corporation's transaction, it also issued an order granting the corporation's retained counsel access to confidential information held by the potential acquisition's business. *Id.* at 1340–41. The district court recognized that the corporation's attorneys needed this confidential information to defend itself in the underlying administrative action, but it also barred the corporation's in-house counsel from accessing the same information. *See id.*

Finding no abuse of discretion, the D.C. Circuit reasoned that if the FTC prevailed on its antitrust claims and thereby required the corporation to divest itself of the competitor's business, that business would once again need the confidential information to compete against the corporation. *Id.* at 1350. The court also noted that the in-house attorneys there sat on the corporation's board of directors, and it expressly relied upon cases that involved in-house attorneys who participated in the "competitive decisionmaking" later envisioned by the *U.S. Steel Corp.* decision. *See id.* (citing, among others, *In re Xerrox Corp.*, 573 F.2d 1300 (2d Cir.1977) and *In re Westinghouse Elec. Corp. Uranium Litig.*, 76 F.R.D. 47, 57 note 6 (W.D.Pa. 1977)).

This Court believes the unique circumstances in *F.T.C. v. Exxon Corp.* distinguish it from the instant case. Further, the *Exxon Corp.* decision itself twice inferred that it meant to limit this holding "to the facts of this case," as if it were cognizant of the peculiar nature of that litigation. *See* 636 F.2d at 1349, 1350. And while the D.C. Circuit issued this opinion approximately four years before the *U.S. Steel Corp.* decision, it appears that most courts faced with the present issue have adopted the later decision's analysis. *See, e.g., Brown Bag Software; Matsushita Elec. Indus. Co.; Amgen, Inc.; Glaxo Inc.; Carpenter Tech. Corp., supra.* This Court will do the same.

Lastly, the Court notes that it does not take lightly the concerns expressed by Volvo Penta. And it recognizes that the balancing test initially conceived by *U.S. Steel Corp., Brown Bag Software* and other cases may have instead transformed into a litmus test that turns on the sole factor concerning "competitive decisionmaking."

The Court believes, however, that both these concerns are outweighed by strong judicial policies. As indicated above, if this Court reached a different result in this dispute, it would stand out as perhaps the only recent authority defying the *U.S. Steel Corp.* analysis, and would thereby undermine the uniformity, predictability and consistency that sound judicial discretion, in most situations, demands.

Further, the Court re-affirms its belief that, as the *U.S. Steel Corp.* decision reasoned, the all-important codes and model rules of professional conduct, coupled with the specter of attorney sanctions or even disbarment, should also allay many of Volvo Penta's concerns of intentional or unintentional disclosure of its information to Brunswick personnel. And, in this Court's view, the "competitive decisionmaking" analysis by itself sufficiently addresses the ultimate question of whether in-house counsel can and will ensure that an opposing party's confidential information will not slip into the hands of its employer.

Accordingly, for the reasons stated above, the Court ORDERS that the protective order attached as Exhibit B to "Brunswick Corporation's Memorandum of Law in Response to Volvo's Motion to Compel and For Entry of a Protective Order" (Docket # 30), be entered contemporaneously herewith.

The Clerk is DIRECTED to mail copies of this Order to counsel of record for all parties.