# United States Court of Appeals
# for the Federal Circuit

---

**IN RE DEUTSCHE BANK TRUST COMPANY AMERICAS AND TOTAL BANK SOLUTIONS, LLC**
*Petitioners.*

---

Miscellaneous Docket No. 920

---

On Petition for a Writ of Mandamus to the United States *District* Court for the Southern *District* of New York, Case No. 1:09-Cv-02675, *Judge* Victor Marrero.

---

## ON PETITION FOR WRIT OF MANDAMUS

---

Before MICHEL, *Chief Judge*, LINN, and PROST, *Circuit Judges.*

LINN, *Circuit Judge.*

### O R D E R

Deutsche Bank Trust Company Americas and Total Bank Solutions, LLC (collectively, "Deutsche") petition for a writ of mandamus directing the United States District Court for the Southern District of New York to vacate its order exempting Charles Macedo ("Macedo"), the lead litigation counsel of Island Intellectual Property LLC, LIDS Capital LLC, Double Rock Corporation, and Intrasweep LLC (collectively, "Island") from the patent

prosecution bar applied to other litigation counsel for Island in the case. *Island Intellectual Prop., LLC v. Deutsche Bank AG*, 658 F. Supp. 2d 615 (S.D.N.Y. 2009) ("*Opinion*"). Island opposes.

Because this petition presents an important issue of first impression in which courts have disagreed, we grant-in-part Deutsche's petition to vacate the district court's order, and remand the case to the district court for reconsideration of its order under the standards articulated herein.

I

This petition stems from a patent infringement suit filed in the Southern District of New York by Island asserting three patents relating to financial deposit-sweep services: U.S. Patents No. 7,509,286, No. 7,519,551, and No. 7,536,350. All three of the asserted patents resulted from continuation-in-part applications filed from a common parent application, now U.S. Patent No. 6,374,231. Island also has nineteen pending applications related to this family of patents through continuations and continuations-in-part. At least fifteen of these applications are unpublished.

On August 19, 2009, Deutsche sought a protective order including a patent prosecution bar preventing anyone who gains access in the litigation to documents marked "confidential – patent prosecution bar" from any involvement in prosecuting any patent in the area of "deposit sweep services" during, and for a limited period after, the conclusion of this litigation. After a very short hearing, and without a written opinion, the magistrate judge assigned to the case granted Deutsche's request as to all of Island's trial counsel, but exempted Macedo, Island's lead trial counsel.

Deutsche moved to reconsider the magistrate judge's order. After full briefing on the issue, Deutsch's motion

was denied. *Island Intellectual Prop., LLC v. Deutsche Bank AG*, No. 09-CV-02675 (S.D.N.Y. Sept. 23, 2009) ("*Reconsideration Order*"). Deutsche then filed objections to the magistrate judge's order with the district court. Pending the district court's decision, the magistrate judge issued an interim protective order containing a patent prosecution bar ("Interim Protective Order"). *Island Intellectual Prop., LLC v. Deutsche Bank AG*, No. 09-CV-02675 (S.D.N.Y. Oct. 27, 2009) ("*Interim Order*"). The Interim Protective Order gave Macedo the choice of either not reviewing the applicable confidential material or being barred from prosecuting patents pertaining to financial services involving sweep functions. Specifically, the Interim Protective Order identifies the information that triggers a bar as follows:

> The designation "CONFIDENTIAL – PATENT PROSECUTION BAR" may be applied by a party to information of the type that can be included in a patent application and form the basis or part of the basis for a claim or claims thereof, which it believes in good faith to constitute confidential or trade secret information, the disclosure of which to a person engaged in or otherwise assisting in patent prosecution in the technical areas to which the information relates would create a substantial risk of injury to the disclosing party.

*Id.* at 2.

The Interim Protective Order describes the extent of the bar as follows:

> No individual that receives information designated "CONFIDENTIAL – PATENT PROSECUTION BAR" shall give advice or participate, supervise or assist in the prosecution of patents pertaining to financial services involving sweep functions during the pendency of the pre-

sent action and for one calendar year after the conclusion of the present litigation, including any appeals.

*Id.* at 5.

The district court, on review, held that the magistrate judge's reconsideration order was not clearly erroneous or contrary to law and adopted it in its entirety. *Opinion* at 621. The district court ordered that the Interim Protective Order would be lifted on November 25, 2009. However, this order was temporarily stayed to allow Deutsche to seek an emergency stay in this court. This petition followed, which automatically lifted the temporary stay. Deutsche also filed an emergency motion requesting a further stay, pending appeal, of the district court's order to lift the Interim Protective Order. We granted Deutsche's motion.

## II

The remedy of mandamus is available only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *See In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996). A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable," *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980).

Final decisions concerning discovery matters are reviewed by this court under the abuse of discretion standard. *Cygnus Therapeutics Sys. v. ALZA Corp.*, 92 F.3d 1153, 1161 n.2 (Fed. Cir. 1996); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986). Although rare, it is not impossible to grant the remedy of mandamus where a matter under review is committed to the district court's discretion. *See Allied Chem.*, 449 U.S.

at 36 (stating that mandamus is "hardly ever" available in cases where the district court's decision is a matter of discretion). Specifically, we have granted mandamus review of discovery orders when the petition presented an important issue of first impression or one in which courts have disagreed. *See, e.g.*, *In re United States*, 590 F.3d 1305, 1308 (Fed. Cir. 2009); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1367 (Fed. Cir. 2007) (en banc); *Regents of the Univ. of Cal.*, 101 F.3d at 1387.

## III

As a threshold issue, we address whether to apply Second Circuit law or Federal Circuit law to the question before us. "[W]e have generally deferred to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure." *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181-82 (Fed. Cir. 1996). However, we have also held that Federal Circuit law applies to discovery matters if the determination implicates an issue of substantive patent law. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307-08 (Fed. Cir. 2001); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). In deciding which law to apply, we consider several factors including: "the uniformity in regional circuit law, the need to promote uniformity in the outcome of patent litigation, and the nature of the legal issue involved." *Manildra Milling*, 76 F.3d at 1181.

A determination of whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution, or alternatively be barred from representing clients in certain matters before the U.S. Patent and Trademark Office ("PTO"), is an issue unique to patent law. Moreover, and as discussed below, there is a noted lack of uniformity among district courts around the country about whether and under what circumstances a patent

prosecution bar should be applied. *See generally* David Hrick, *How Things Snowball: The Ethical Responsibilities and Liability Risks Arising from Representing a Single Client in Multiple Patent-Related Representations*, 18 Geo. J. Legal Ethics 421, 442 (2005) (stating that the question of whether attorneys who prosecute patents may be barred from access to certain sensitive discovery "has split the courts").  Applying regional circuit law to this question is likely to produce differing results depending on the regional circuit in which the case originated.  *See Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006) (finding that Federal Circuit law, as opposed to Eighth Circuit law, applied to what effect a dismissal with prejudice has on the legal requirements under 35 U.S.C. § 285 because otherwise the law might vary by regional circuit).  Given the unique relationship of this issue to patent law, and the importance of establishing a uniform standard, we hold that the determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law.

## IV

### A

A party seeking a protective order carries the burden of showing good cause for its issuance.  *See* Fed. R. Civ. P. 26(c); *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209-10 (Fed. Cir. 1987).  The same is true for a party seeking to include in a protective order a provision effecting a patent prosecution bar.  Typically, protective orders include provisions specifying that designated confidential information may be used only for purposes of the current litigation.  Such provisions are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation.  Courts have recognized, however, that there may be circumstances in which even the most rigorous efforts of the recipient of such information

to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise. As aptly stated by the District of Columbia Circuit, "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).

We first addressed this subject in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), a case involving the antidumping laws. In that case the Court of International Trade ("CIT") denied in-house counsel access to certain confidential information, concluding that the information at issue was "extremely potent" confidential information and of such a nature that it would be "humanly impossible" to control its inadvertent disclosure by in-house counsel. *Id.* at 1467. While acknowledging that the CIT's "well-taken concern for the nature and scope of the information would be eminently applicable to . . . the crafting of a suitable protective order," we held that "it was error to deny access solely because of in-house counsel's 'general position.'" *Id.* We stated that "[w]hether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis . . . ." *Id.* at 1468. We went on to hold that the counsel-by-counsel determination should turn on the extent to which counsel is involved in "competitive decisionmaking" with its client. *Id.*

We defined competitive decisionmaking as:

[S]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*Id.* at 1468 n.3. Although pricing and product design were listed as specific exemplars of activity involving competitive decisionmaking, subsequent opinions have recognized that they are only two activities that might implicate or involve competitive decisionmaking. *See Cummins-Allison Corp. v. Glory Ltd.*, No. 02-CV-7008, 2003 U.S. Dist. LEXIS 23653, at *14 (N.D. Ill. Dec. 31, 2003) ("Plainly, the *U.S. Steel* court's listing of client decisions was not limited to 'pricing and product design.' The court's use of 'etc.' reveals that those are only examples of the kinds of client decisions that may be made 'in light of similar or corresponding information about a competitor.'").

The concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel also represent the same client in prosecuting patent applications before the PTO. Since the decision in *U.S. Steel*, patent prosecution bars have been considered in a number of patent infringement cases. However, other than our unpublished decision in *In re Sibia Neurosciences, Inc.*, No. 525, 1997 WL 688174, 1997 U.S. App. LEXIS 31828 (Fed. Cir. Oct. 22, 1997) (Table), this Court has not addressed the precise question of when an attorney's activities in prosecuting patents on behalf of a client raises an unacceptable risk of inadvertent disclosure. While there is general agreement that the competitive decisionmaking test articulated in *U.S. Steel* is the correct standard, the district courts have developed divergent views on whether and to what extent patent prosecution activities entail competitive decisionmaking. *See* James Juo & David J. Pitman, *A Prosecution Bar in Patent Litigation Should be the Exception Rather Than the Rule*, 15 Va. J.L. & Tech. 43 (2010) (containing a comprehensive collection of the two lines of trial court decisions).

Some district courts have held that patent prosecution inherently involves competitive decisionmaking. *See, e.g.*,

*Cummins-Allison Corp. v. Glory Ltd.*, No. 02-CV-7008, 2003 U.S. Dist. LEXIS 23653, at *24 (N.D. Ill. Jan. 2, 2004); *Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 USPQ2d 1783, 1786 (D. Nev. 1998) (finding that since the client "has made a considerable investment in [its litigation and prosecution attorney's] technical training" there is no doubt that the attorney "works very closely with and advises Acres on matters relating to product design"); *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-CV-488, 1994 WL 16189689, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994). Other courts hold that patent prosecution, by itself, does not raise a presumption of an unacceptable risk of inadvertent disclosure. *See, e.g.*, *Avocent Redmond Corp. v. Rose Elecs., Inc.*, 242 F.R.D. 574 (W.D. Wa. 2007); *Trading Techs. Int'l, Inc. v. Espeed, Inc.*, No. 04-CV-5312, 2004 WL 2534389, 2004 U.S. Dist. LEXIS 19429 (N.D. Ill. Sept. 24, 2004); *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762 (D. Md. 2003).

Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decision-making. Indeed, "denying access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel*. The facts, not the category must inform the result. Our holding in *U.S. Steel* dictates that each case should be decided based on the specific facts involved therein." *Sibia*, 1997 WL 688174, at *3, 1997 U.S. App. LEXIS 31828, at *7.

Some attorneys involved in patent litigation, for example, may have patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements. Similarly, some attorneys may be involved in high-altitude oversight of

patent prosecution, such as staffing projects or coordinating client meetings, but have no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios. There is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation. This is because the opportunity such attorneys have to engage with the client in any competitive decisionmaking in connection with such patent prosecution activities is remote. Unless there is a reasonable expectation that one such attorney's involvement or authority will change in a relevant way during the tenure of the prosecution bar, a judge may find that the attorney is properly exempted from a prosecution bar.

On the other hand, many attorneys involved in litigation are more substantially engaged with prosecution. Such involvement may include obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution. For these attorneys, competitive decisionmaking may be a regular part of their representation, and the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys. Such attorneys would not likely be properly exempted from a patent prosecution bar.

Between these examples lies a range of patent prosecution activities that may pose a closer question of the propriety of a patent prosecution bar. For instance, some junior level attorneys may primarily take instructions from more senior level attorneys, but may still have occasion to shape the content of a patent application. Some senior level supervisors may primarily serve as liaisons between prosecuting attorneys and clients, but may also have the opportunity to influence the direction of prosecution. While these activities may not pose the heightened risk inherent in principal prosecution activities, the risk of inadvertent disclosure may nonetheless arise under the facts and circumstances of a particular case if counsel is engaged with the client in certain competitive decisionmaking. It is therefore important for a court, in assessing the propriety of an exemption from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis.

### B

A determination of the risk of inadvertent disclosure or competitive use does not end the inquiry. Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice. *U.S. Steel*, 730 F.2d at 1468; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Brown Bag Software*, 960 F.2d at 1470.

In making this determination, the court should consider such things as the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past

history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO.  *See U.S. Steel*, 730 F.2d at 1468 ("Because the present litigation is extremely complex and at an advanced stage . . . forcing USS to rely on newly retained counsel would create an extreme and unnecessary hardship.").  This is no easy balancing act, however, since the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation.

In evaluating whether to grant a patent prosecution bar in the first instance, a court must be satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the PTO.  For example, financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar.  On the other hand, information related to new inventions and technology under development, especially those that are not already the subject of pending patent applications, may pose a heightened risk of inadvertent disclosure by counsel involved in prosecution-related competitive decisionmaking as described above.  Also relevant to the threshold inquiry are such factors as the scope of the activities prohibited by the bar, the duration of the bar, and the definition of the subject matter covered by the bar.  *See MedImmune*, 271 F. Supp. 2d at 775 n.14 (refusing to issue a patent prosecution bar order when, among other things, there had been no showing that patent counsel was currently prosecuting patents in the same subject matter of the litigation).  These factors should also be taken into account when balancing the

conflicting interests in determining whether a particular individual may be properly exempt from the bar.

V

We therefore hold that a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. We further hold that the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

VI

In this case, the district court refused to adopt a rule amounting to a per se prohibition on the use of litigation counsel who also prosecute patents. *Opinion* at 620-21. In particular, the magistrate judge properly refused to rely on the line of district court cases stemming from *Motorola Inc. v. Interdigital Technology Corp.*, No. 93-CV-488, 1994 WL 16189689, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994), which found that "'patent prosecution is, by its very nature, a form of competitive decision-making.'" *Reconsideration Opinion* at 1-3 (quoting *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 580 (N.D. Cal. 2008)). The district court, however, did not appear to have before it a full evidentiary record

of the nature and extent of Macedo's patent prosecution of inventions related to the subject matter of the litigation, to be able to assess whether Macedo's role in prosecution for Island constituted competitive decisionmaking under the standards set forth herein. The court, on remand, should consider such additional evidence it deems relevant to reassess and reevaluate its determination. In addition, because the district court's balancing analysis was based at least in part on its assessment of the risk of inadvertent disclosure, the balancing analysis must likewise be reevaluated following reconsideration of that risk on remand, in accordance with the standards set forth herein.

For the foregoing reasons, we grant in part the petition for writ of mandamus, vacate the discovery order, and remand the case to the district court for reconsideration of its order under the standards set forth in this order.

IT IS ORDERED THAT:

The petition is granted-in-part and the case is remanded for further proceedings consistent herewith.

FOR THE COURT

May 27, 2010

Date

/s/ Jan Horbaly

Jan Horbaly
Clerk

cc: Counsel Of Record
Clerk, United States District Court for the Southern District of New York