ACTIVEVIDEO NETWORKS,
INC., Plaintiff,

v.

VERIZON COMMUNICATIONS,
INC., et al., Defendants.

Action No. 2:10cv248.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 3, 2010.

Nathan Wayne McCutcheon, David Michael Morris, Morgan Lewis & Bockius LLP, Washington, DC, Stephen Edward Noona, Kaufman & Canoles, P.C., Norfolk, VA, Ahren Christian Hsu–Hoffman, Daniel Johnson, Jr., Dion Michael Bregman, Efrain Staino Flores, Jason Evan Gettleman, Lorraine Marie Casto, Michael Francis Carr, Michael John Lyons, Morgan, Lewis & Bockius LLP,

Palo Alto, CA, Brett Michael Schuman, Sheila Jambekar, Morgan Lewis & Bockius LLP, San Francisco, CA, for Plaintiff.

Brent Lee Vannorman, Gregory N. Stillman, Hunton & Williams, Norfolk, VA, Brian Mark Buroker, Bradley Thomas Lennie, Justin T. Arbes, Hunton & Williams, Evan Todd Leo, John Christopher Rozendaal, Joseph Solomon Hall, Kenneth Matthew Fetterman, Kfir Ben–Gurion Levy, Kiran S. Raj, Mark Charles Hansen, Michael Eugene Joffre, Michael Kerry Kellogg, Rebecca Ann Beynon, W. Joss Nichols, Wan Joo Kim, Kellogg Huber Hansen Todd Evans & Figel PLLC, Washington, DC, Caren K. Khoo, John P. Frantz, Leonard Charles Suchyta, Verizon Corporate Resources Group LLC, Basking Ridge, NJ, Henry Braude Gutman, Lisa Heather Rubin, Noah Maxim Leibowitz, Simpson Thacher & Bartlett LLP, New York, NY, Jason Bussey, Jeffrey Eric Ostrow, Patrick Edward King, Simpson Thacher & Bartlett LLP, Palo Alto, CA, for Defendants.

### ORDER

F. BRADFORD STILLMAN, United States Magistrate Judge.

On October 6, 2010, defendants Verizon Communications, Inc., Verizon Services Corp., Verizon Virginia Inc., and Verizon South Inc. (collectively, "Verizon") filed an Expedited Motion for Entry of Protective Order (ECF No. 52) and supporting brief (ECF No. 53). The plaintiff, ActiveVideo Networks, Inc. ("ActiveVideo") filed its opposition (ECF No. 84) and a supporting declaration (ECF No. 85) on October 20, 2010. Verizon filed a reply brief (ECF No. 91) on October 21, 2010.

### I. BACKGROUND

This is a patent infringement case, ·in which ActiveVideo alleges infringement by Verizon of certain of ActiveVideo's patents related to interactive cable television services, Verizon alleges infringement by ActiveVideo of certain of Verizon's own patents related to interactive cable television services, and both parties seek declarations of non-infringement or invalidity as to the other side's patents. (*See* ActiveVideo's 1st Am. Compl., ECF No. 28; Verizon's Answer to 1st Am. Compl. & Countercls., ECF No. 29; ActiveVideo's Answer to Countercls. & Countercls., ECF No. 38.) A *Markman* claim construction hearing is scheduled to take place on January 4, 2011.

Discovery in this case will necessarily involve the disclosure of trade secrets or other confidential research, development, or commercial information, subject to an appropriate protective order. The parties have agreed to a comprehensive protective order, with one unresolved issue in dispute: Verizon desires that certain of its in-house counsel have access to protected confidential information, while ActiveVideo objects to disclosure of protected confidential information to any of Verizon's in-house counsel, both generally and as to specific attorneys.

Verizon has identified four in-house attorneys whom it would like to have access to protected confidential information: (1) John Thorne, Senior Vice President and General Counsel at Verizon, who is responsible for litigation of antitrust, intellectual property, and telecommunications cases; (2) Leonard Charles Suchyta, Vice President and Associate General Counsel at Verizon, who is responsible for all intellectual property matters involving Verizon and its affiliates, excluding certain trademarks and copyrights owned by Verizon Wireless; (3) John P. Frantz, Vice President and Associate General Counsel, who is responsible for complex litigation, including matters in the areas of antitrust, insurance, tax, and intellectual property, and for Verizon's electronic discovery group; and (4) Caren K. Khoo, Assistant General Counsel at Verizon, who is responsible for conducting and managing intellectual property litigation matters.

### II. DISCUSSION

■ This dispute pits ActiveVideo's interest in maintaining the confidentiality of certain proprietary information against Verizon's right to its choice of trial counsel. The specific question presented is whether a corporate party's in-house counsel should be denied access to confidential information produced by a party-opponent pursuant to a

protective order issued under Rule 26(c) of the Federal Rules of Civil Procedure.[1]

■ The leading case on point in this district is *Volvo Penta of the Americas, Inc. v. Brunswick Corp.*, 187 F.R.D. 240 (E.D.Va. 1999), in which this Court addressed a very similar dispute in the context of antitrust litigation. *Volvo Penta* in turn relied on a test first formulated by the Federal Circuit in *U.S. Steel Corp. v. United States.* 730 F.2d 1465 (Fed.Cir.1984), and later refined in several subsequent decisions by that court. *See Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577 (Fed.Cir.1991); *In re Sibia Neurosciences, Inc.*, 132 F.3d 50, 1997 WL 688174 (Fed.Cir.1997) (unpublished table opinion); *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373 (Fed.Cir.2010) (applying *U.S. Steel* in patent litigation). Because this case concerns patent claims, any appeal would lie to the Federal Circuit. *See* 28 U.S.C. §§ 1292(c), 1295(a)(1). The Court therefore considers *U.S. Steel* and its Federal Circuit progeny to be binding precedent in this case.[2]

■ ActiveVideo seeks the categorical exclusion of Verizon's in-house counsel from accessing confidential information produced in discovery by ActiveVideo.

Denial or grant of access [to confidential information], however, cannot rest on a general assumption that one group of lawyers are more likely or less likely inadver-

tently to breach their duty under a protective order. . . . Like retained counsel, . . . in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions. In-house counsel provide the same services and are subject to the same types of pressures as retained counsel. The problem and importance of avoiding inadvertent disclosure is the same for both.

*U.S. Steel*, 730 F.2d at 1468. Instead, the question of access to confidential information must be resolved " 'on a counsel-by-counsel basis,' by assessing 'each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained.' " *Volvo Penta*, 187 F.R.D. at 243 (quoting *U.S. Steel*, 730 F.2d at 1468–69). Ultimately, "the counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *Deutsche Bank*, 605 F.3d at 1378 (citing *U.S. Steel*, 730 F.2d at 1468).[3]

■ "Competitive decisionmaking" is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n. 3.[4]

1. Rule 26(c)(1)(G) provides for protective orders prohibiting or restricting the discovery of trade secrets and confidential research, development, or commercial information.

2. Typically, the Federal Circuit would defer to regional circuit law when an issue involves interpretation of the Federal Rules of Civil Procedure. *See Deutsche Bank*, 605 F.3d at 1377. But in the absence of any Fourth Circuit law on this issue, the Federal Circuit's several decisions on point are controlling.

3. In *Volvo Penta*, this Court noted that some decisions by other courts have suggested that a court should also consider: "(1) the nature of the litigation and whether that litigation presents difficult or complex issues or claims; [and] (2) whether alternative discovery measures would assist the in-house attorney seeking access to the confidential information in the development of the litigation." *Volvo Penta*, 187 F.R.D. at 242 (citing *Brown Bag Software v. Symantec Corp.*,

960 F.2d 1465, 1470 (9th Cir.1992), and *Amgen, Inc. v. Elanex Pharm., Inc.*, 160 F.R.D. 134, 138 (W.D.Wash.1994)). None of the Federal Circuit decisions in this area have addressed these additional *Brown Bag* factors, instead focusing exclusively on competitive decisionmaking. Indeed, in *Volvo Penta*, this Court went on to recognize that "the 'competitive decisionmaking' factor [has become] the *sine qua non* of the in-house counsel analysis, regardless of other factors that potentially garner in favor of restricting in-house access." *Volvo Penta*, 187 F.R.D. at 243.

4. *See also Volvo Penta*, 187 F.R.D. at 242 (" 'Competitive decisionmaking' refers to the in-house counsel's role, if any, in making company decisions that affect contracts, marketing, employment, pricing, product design, or 'any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor.' ") (quoting *U.S. Steel*, 730 F.2d at 1468 n. 3) (omission in original).

## A. ActiveVideo's Objections to Specific Attorneys

ActiveVideo asserts specific reasons why each of the four in-house attorneys identified by Verizon are involved in competitive decisionmaking and therefore should be barred from accessing protected confidential information.

### 1. John Thorne

According to his sworn declaration, Mr. Thorne, a Senior Vice President and Deputy General Counsel at Verizon, is responsible for litigation of antitrust, intellectual property, and telecommunications cases. He is also an officer and director of two Verizon affiliates: Bell Atlantic Entertainment and Information Services Group, Inc. and Bell Atlantic Global Wireless, Inc. (collectively, the "Bell Atlantic affiliates"), neither of which is involved in this litigation, and neither of which offers any products or services for sale. Mr. Thorne's declaration affirmatively states that he is not involved in competitive decisionmaking at Verizon. In particular, Mr. Thorne's declaration states:

> I am not involved in competitive decision making at Verizon or any affiliated entities. I have no responsibilities related to patent prosecution or patent licensing regarding any Verizon or any affiliated entity products. I have no involvement in decisions involving pricing, products and services sold by Verizon or its affiliated entities, marketing, technology, or any other similar competitive decision making. I do not conduct scientific research at Verizon or any affiliated entities. I do not sit on any business councils for Verizon or its affiliated entities.

(Thorne Decl. ¶ 5, ECF No. 53 Ex. 3.)

In opposition, ActiveVideo submits evidence to suggest that, contrary to his declaration, Mr. Thorne is indeed involved in competitive decisionmaking at Verizon.

■ First, ActiveVideo submits an article published in The Deal Magazine, which recounts an interview with Mr. Thorne regarding his involvement in corporate mergers on behalf of Verizon. (Exhibit C to Noona Decl., ECF No. 85 Ex. C.) ActiveVideo argues that Mr. Thorne's involvement in corporate mergers amounts to competitive decisionmaking. But in reviewing the exhibit, the Court finds evidence only of ordinary antitrust counseling and litigation. Although, by its very nature, Mr. Thorne's role as an antitrust lawyer involves advice and participation in decisions *about competition*, it does not necessarily implicate his involvement in "competitive decisionmaking"—i.e., "decisions ... made in light of *similar or corresponding* information about a competitor." *See U.S. Steel*, 730 F.2d at 1468 n. 3 (emphasis added). In the article, Mr. Thorne describes his role as a litigator and as an advocate for Verizon before government agencies such as the Department of Justice. There is nothing to suggest his involvement in competitive decisionmaking.

Second, ActiveVideo submits a copy of a confidential PowerPoint presentation in which Mr. Thorne participated with another individual in presenting a report on intellectual property rights management. (Exhibit E (filed under seal), ECF No. 86.) The content of the presentation was entirely redacted on privilege grounds, and the intended audience is unknown.[5] Without more, the Court is unable to infer that Mr. Thorne did anything more than provide a report on intellectual property rights management to an unspecified audience, which does not itself constitute competitive decisionmaking.

■ Third, ActiveVideo submits two redacted e-mail correspondence chains in which Mr. Thorne is one of the "cc" recipients. (Exhibit F (filed under seal), ECF No. 87; Exhibit G (filed under seal), ECF No. 88.) The content of the correspondence is largely redacted on privilege grounds. From what remains, the correspondence appears to concern the agendas for a "network council

---

**5.** ActiveVideo characterizes the presentation as one "covering topics including Verizon's technology, vendor strategy, and system architecture." (ActiveVideo Opp'n 9, ECF No. 84.) While this may properly characterize the presentation immediately following Mr. Thorne's, given by another individual under a different presentation title, there is nothing to suggest that Mr. Thorne's presentation involved those same topics.

meeting" and a "Motorola Executive Meeting," without any further detail regarding the substantive agenda or Mr. Thorne's role in connection with either meeting. ActiveVideo characterizes these e-mail chains as evidence of Mr. Thorne's involvement in "sourcing and strategic planning regarding competition in the cable market." (ActiveVideo Opp'n 9, ECF No. 84.) But while the titles of the individual authors of the e-mail messages suggest that they are involved in "policy," "planning," and "strategy," and therefore may be competitive decisionmakers in their own right, there is nothing in this e-mail correspondence to suggest that Mr. Thorne himself has any role in competitive decisionmaking. Mere correspondence with competitive decisionmakers or attendance at competitive decisionmaking meetings does not itself constitute competitive decisionmaking. *See Matsushita,* 929 F.2d at 1580.

Finally, ActiveVideo refers the Court to an order entered in another patent lawsuit involving Verizon, *TiVo Inc. v. Verizon Communications, Inc.,* No. 2:09–CV–257 (E.D.Tex. June 15, 2010) (order granting proposed protective order as modified).[6] That court denied Mr. Thorne access to protected confidential information in that case on the basis his position on the board of two Verizon affiliates. In particular, that court found that "[w]hile Mr. Thorne may not directly participate in the competitive decisions of Verizon, his position on the board of two of its [affiliated companies-]one of which is related to at least one of the patents-in-suit-creates an unacceptable opportunity for the inadvertent disclosure of information." *TiVo,* slip op. at 4. The Texas district court further noted that "allowing Mr. Thorne access could create a situation where his obligations as an attorney directly compete with his fiduciary duty to Bell Atlantic Entertainment or Bell Atlantic Global Wireless." *Id.*

Neither of the Bell Atlantic affiliates is implicated by the patents at issue in this case, and neither company is involved in this litigation.[7] Moreover, as Mr. Thorne's declaration makes clear, the two Bell Atlantic affiliates offer no products or services for sale, making any conflict between his obligations as an attorney subject to a protective order and his fiduciary duty to the Bell Atlantic affiliates remote, at best. (*See* Thorn Decl. ¶ 5, ECF No. 53 Ex. 3.)

Accordingly, based on the evidence of record, the Court FINDS that John Thorne is not involved in competitive decisionmaking such that he should be denied access to confidential information produced pursuant to a protective order in this case.

### 2. Leonard Charles Suchyta

██ According to his sworn declaration, Mr. Suchyta, a Vice President and Associate General Counsel at Verizon, is responsible for all intellectual property matters involving Verizon and its affiliates, excluding certain trademarks and copyrights owned by Verizon Wireless. Mr. Suchyta's declaration affirmatively states that he is not involved in competitive decisionmaking at Verizon. In particular, Mr. Suchyta's declaration states:

I am not involved in competitive decision making at Verizon or any affiliated entities. I have no involvement in decisions involving pricing, products and services sold by Verizon or its affiliated entities, marketing, technology, or any other similar competitive decision making. I do not conduct scientific research at Verizon or any affiliated entities. I do not sit on any business councils for Verizon or its affiliated entities. I am not an officer or a member of the board of directors of Verizon or any affiliated entities.

(Suchyta Decl. ¶ 3, ECF No. 53 Ex. 4.)

Mr. Suchyta does, however, admit to involvement in patent prosecution and licens-

---

6. A copy of the *TiVo* order is attached to Verizon's memorandum in support of its motion for a protective order. (ECF No. 53 Ex. 7.)

7. On October 13, 2010, Verizon filed a motion for leave to amend its counterclaims against ActiveVideo, seeking to add a counterclaim for infringement of U.S. Patent No. 7,561,214. (ECF No. 62.) The Court notes that this is the patent referenced by the *TiVo* court as a basis for deny-

ing access to Mr. Thorne. But in its memorandum in support of this motion, Verizon has represented that the '214 patent was assigned from Bell Atlantic Entertainment to Verizon Communications Inc. in February 2010, several months before the inception of this litigation. (Verizon Mem. in Supp. 9, ECF No. 53.) In the absence of any information to the contrary, the Court accepts this representation of counsel as true.

ing. In particular, Mr. Suchyta's declaration states:

My interaction with officers/employees of Verizon or affiliated entities who are involved in competitive decision making is limited to occasionally counseling them on intellectual property matters. This counseling includes reporting on intellectual property litigation, providing legal assistance on transactions and agreements involving intellectual property matters and reporting on the status of various intellectual property matters. I am not directly involved in the drafting or prosecution of patent applications. Verizon and its affiliated entities personnel who report to me have that responsibility. I am listed as having a power of attorney and as a contact person on some Verizon and affiliated entities patents. To the extent that Verizon or its affiliated entities license patents or other intellectual property, I am involved in that licensing activity.

(*Id.* ¶ 4.)

In opposition, ActiveVideo does not submit any evidence, but instead relies on Mr. Suchyta's declaration and on copies of two Verizon patents attached as exhibits to Verizon's answer and counterclaims. ActiveVideo argues that Mr. Suchyta should be denied access to protected confidential information because he is involved in patent prosecution on behalf of Verizon. In particular, ActiveVideo notes that Mr. Suchyta is named as attorney-of-record in the prosecution of at least two of the patents upon which Verizon's counterclaims are based. (*See* Exhibits B & C to Verizon's Answer to 1st Am. Compl. & Countercls., ECF No. 29 Exs. B & C.)

■ But the Federal Circuit has expressly rejected adopting a per se rule that patent prosecution is a competitive decisionmaking activity. *See Deutsche Bank*, 605 F.3d at 1379–82. Where an attorney's patent prosecution duties consist largely of status reporting or "high-altitude oversight" of patent prosecution, "[t]here is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or

be influenced by information they may learn as trial counsel during the course of litigation." *Id.* at 1379–80. Mr. Suchyta's declaration affirmatively states that he has no role in competitive decisionmaking and that he is not directly involved in the drafting or prosecution of patent applications.[8] (Suchyta Decl. ¶¶ 3–4, ECF No. 53 Ex. 4.) ActiveVideo submits no evidence that, contrary to his declaration, Mr. Suchyta has a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios," or that he is otherwise "substantially engaged" in patent prosecution. *See Deutsche Bank*, 605 F.3d at 1380.

■ ActiveVideo also suggests that Mr. Suchyta's involvement in patent licensing warrants denying him access to protected confidential information. Once again, ActiveVideo relies on Mr. Suchyta's declaration, in which he admits to "providing legal assistance on transactions and agreements involving intellectual property matters," and to his involvement in patent licensing activity on behalf of Verizon. (Suchyta Decl. ¶ 4, ECF No. 53, Ex. 4.) But as with patent prosecution activities, "equating licensing and competitive decisionmaking as a *per se* matter does not conform with the Federal Circuit's long-standing directive that competitiveness can only be determined on a case-by-case basis." *Pfizer Inc. v. Apotex Inc.*, 744 F.Supp.2d 758, 766 (N.D.Ill.2010). Indeed, "[c]ourts that have equated licensing with competitive decisionmaking have relied on specific evidentiary records-often complex ones-and not on inflexible rules to reach their decisions." *Id.* ActiveVideo submits no specific evidence to support a finding that Mr. Suchyta's involvement in patent licensing activity is such that it amounts to competitive decisionmaking.

Finally, the Court notes that, without more, Mr. Suchyta's "interaction with officers/employees of Verizon ... who are involved in competitive decision making" does not itself constitute involvement in competitive decisionmaking by Mr. Suchyta. *See Matsushita*, 929 F.2d at 1580.

---

**8.** The Court notes that the two patents for which Mr. Suchyta served as attorney-of-record were issued in 2001 and 2002, and thus do not neces-sarily reflect Mr. Suchyta's current duties. (*See* Exhibits B & C to Verizon's Answer to 1st Am. Compl. & Countercls., ECF NO. 29 Exs. B & C.)

Accordingly, based on the evidence of record, the Court FINDS that Leonard Charles Suchyta is not involved in competitive decisionmaking such that he should be denied access to confidential information produced pursuant to a protective order in this case.

### 3. John P. Frantz

According to his sworn declaration, Mr. Frantz, a Vice President and Associate General Counsel at Verizon, is responsible for complex litigation, including matters in the areas of antitrust, insurance, tax, and intellectual property, and for Verizon's electronic discovery group. Mr. Frantz's declaration affirmatively states that he is not involved in competitive decisionmaking. In particular, Mr. Frantz's declaration states:

> I am not involved in competitive decisionmaking at Verizon or any affiliated entities. I have no responsibilities related to patent prosecution or patent licensing regarding any Verizon or any affiliated entity products. I have no involvement in decisions involving pricing, products and services sold by Verizon or its affiliated entities, marketing, technology, or any other similar competitive decision making. I do not conduct scientific research at Verizon or its affiliated entities. I do not sit on any business councils for Verizon or its affiliated entities. I am not a member of the board of directors of Verizon or any affiliated entities.

(Frantz Decl. ¶ 3, ECF No. 53 Ex 5.)

In opposition, ActiveVideo submits evidence to suggest that, contrary to his declaration, Mr. Frantz is indeed involved in competitive decisionmaking at Verizon.

First, ActiveVideo submits a newspaper article as evidence that Mr. Frantz has "spoken in the press about Verizon's business strategy in the cable television market." (ActiveVideo Opp'n 11, ECF No. 84.) But in reviewing the article, it is clear that Mr. Frantz's statement was in connection with ongoing litigation and was not intended as a comment on Verizon's business strategy.

(*See* Exhibit D to Noona Decl., ECF No. 85 Ex. D.)

 Second, ActiveVideo submits a redacted e-mail correspondence chain in which Mr. Frantz is one of the "cc" recipients. (Exhibit I (filed under seal), ECF No. 89.) The content of the correspondence is largely redacted on privilege grounds. From what remains, the correspondence appears to concern a proposed partnership of some sort between Verizon and TiVo, without any further details. ActiveVideo characterizes this e-mail chain as evidence that "Mr. Frantz is involved in discussing strategic partnerships with direct competitors." (ActiveVideo Opp'n 11, ECF No. 84.) In response, Verizon notes that this e-mail exchange relates to an effort to settle litigation between Verizon and TiVo. (Verizon Reply 6, ECF No. 91.) Under certain circumstances, an attorney's advice and participation in litigation settlement negotiations may nevertheless constitute competitive decisionmaking, but "[t]he party [opposing access] must proffer evidence linking settlement negotiations and competitive decisionmaking in order to prevail." *Pfizer*, 744 F.Supp.2d at 764; *see also Sprint Commc'ns Co. v. Big River Tel. Co.*, No. 08–2046–JWL, 2008 WL 4401690, at *3–*4 (D.Kan. Sept. 16, 2008) (in-house counsel who provided advice on settlement of patent litigation was not engaged in competitive decisionmaking). ActiveVideo submits no evidence to suggest Mr. Frantz's involvement in anything more than ordinary litigation settlement negotiations.

Accordingly, based on the evidence of record,[9] the Court FINDS that John P. Frantz is not involved in competitive decisionmaking such that he should be denied access to confidential information produced pursuant to a protective order in this case.

### 4. Caren K. Khoo

According to her sworn declaration, Ms. Khoo, an Assistant General Counsel at Verizon, is responsible for conducting and managing intellectual property litigation matters. Ms. Khoo's declaration affirmatively states

---

**9.** The Court notes that Mr. Frantz was previously determined by the Federal Communications Commission to be uninvolved in competitive decisionmaking, but that decision was rendered in 2002 and does not necessarily reflect Mr. Frantz's current duties.

that she is not involved in competitive decisionmaking. Paragraph 3 of Ms. Khoo's declaration is identical to paragraph 3 of Mr. Frantz's declaration, quoted above.

ActiveVideo submits no evidence to suggest that Ms. Khoo herself is involved in competitive decisionmaking at Verizon. Instead, ActiveVideo suggests that the "competitive decisionmaking" status of the other three in-house lawyers should be imputed to her, citing *ProBatter Sports, LLC v. Joyner Technologies, Inc.*, No. 05–CV–2045–LRR, 2006 WL 5278236, 2006 U.S. Dist. LEXIS 74219, at *13–*14 (N.D.Iowa Oct. 11, 2006). But the *ProBatter* decision was based on "unique circumstances" that do not apply in this case. *See id.* at *12–*14. Moreover, the *ProBatter* decision is contrary to the rule espoused in *U.S. Steel* and its progeny that the party opposing access must provide "specific evidence ... that supports a finding of competitive decisionmaking." *See Pfizer*, 744 F.Supp.2d at 765.

Accordingly, based on the evidence of record, the Court FINDS that Caren K. Khoo is not involved in competitive decisionmaking such that she should be denied access to confidential information produced pursuant to a protective order in this case.

### B. ActiveVideo's General Objections

ActiveVideo also raises several general objections to granting in-house counsel access to protected confidential information.

 ActiveVideo argues that Verizon has retained a large number of outside attorneys, making access by in-house counsel unnecessary. But the fact that a party has retained a "sizable cadre of outside lawyers" does not support barring in-house attorneys from accessing protected confidential information. *See Volvo Penta*, 187 F.R.D. at 243 (quoting *Amgen*, 160 F.R.D. at 137–38).

 ActiveVideo argues that the information at issue is extremely sensitive and that Verizon has not established any special need for access to the confidential information by in-house counsel. But neither a special need for nor the "extreme sensitivity" of protected confidential information is pertinent to the issue of whether in-house counsel may be granted or denied access to protected confidential information. *See id.* at 244 (citing Fed.R.Civ.P. 26(b)(1), *Brown Bag Software*, 960 F.2d at 1470–71, and *Amgen*, 160 F.R.D. at 138–39).

ActiveVideo suggests that Verizon's in-house counsel should be barred from accessing protected confidential information in this case because it failed to seek similar access in a related case against Cablevision before the International Trade Commission, in which documents were subpoenaed from ActiveVideo as a non-party to that litigation. This Court considered and rejected a virtually identical argument in *Volvo Penta*. ActiveVideo was not a party to the Cablevision litigation, and the "issues and need for in-house scrutiny may change when the documents come from a party-opponent as opposed to a witness." *See id.* at 244–45.

### III. CONCLUSION

For the foregoing reasons, Verizon's Expedited Motion for Entry of Protective Order is GRANTED.

The Court will enter the Protective Order as proposed by Verizon, with the following modification: Paragraph 3(a) of the Protective Order, which defines the term "In-House Counsel" as used throughout the Protective Order, shall specifically identify each of the four approved Verizon in-house lawyers by name.

Counsel for Verizon shall prepare and submit a revised Protective Order within five (5) days of entry of this Order.

IT IS SO ORDERED.